

YAAKOV SAKS▲•*
JUDAH STEIN▲•
ELIYAHU BABAD▲^
MARK ROZENBERG •
KENNETH WILLARD▲•

▲ NJBar Admissions
^ CT & NJ Bar Admissions
• NY Bar Admission
*Federal Court Bar Admissions
AR, CT, CO, DC, IL, MI, MO, ND, NE, NM, TN, TX, WI

One University Plaza, Suite 620, Hackensack, NJ 07601 | tel: 201.282.6500 | fax: 201.282.6501 | www.steinsakslegal.com

March 28, 2023

**Via CM/ECF**
The Honorable Hector Gonzalez
United States District Court
Eastern District of New York
25 Cadman Plaza East
New York, NY 11021

RE:   *Dawkins v. Brady Library Lounge, LLC*
     Case No.: 1:23-cv-00207-HG

Dear Judge Gonzalez:

    Plaintiff writes in response to Your Honor's Order of March 15, 2023, requesting Defendant clarify its earlier letter to the Court. *See* Dkt. # 11. Defendant has requested that this Court limit any future application for attorneys' fees based on speculative notions about the reasonableness of Plaintiff's attorneys' fees and, by implication, its initial settlement demand. As will be set forth below, Defendant's arguments are meritless.

    The Second Circuit has held, "[a]bsent a showing of bad faith, 'a party's declining settlement offers should [not] operate to reduce an appropriate fee award.'" *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992) (quoting *Cowan v. Prudential Ins. Co. of America*, 728 F. Supp. 87, 92 (D. Conn. 1990)(stating that "[a] rule giving trial judges discretion to deny [attorney's] fees where the refusal of an offer is shown after the fact to have been unwise might well lead to very uneven results and even misuse in cases in which judges become involved in settlement negotiations")), *rev'd on other grounds*, 935 F.2d 522 (2d Cir. 1991). Similarly, in *Rozell v. Ross-Hoist*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008), the court explained that it was not "appropriate to reduce the lodestar on the grounds that plaintiff might have settled earlier and still obtained a substantial recovery." *Rozell*, 576 F. Supp. 2d at 543. "Although *Rozell* addressed a situation where plaintiff had rejected a Rule 68 offer of judgment, the court explained that relying on any rejected settlement offer as a basis for reducing a fee award would undermine the policy of encouraging settlement negotiations and Rule 68 offers." *Siracuse v. Program for the Dev. of Human Potential*, No. 07 CV 2205 (CLP), 2012 U.S. Dist. LEXIS 73456, at *61-62 (E.D.N.Y. Apr. 30, 2012).



Moreover, "for this Court to deny the plaintiff fees because she rejected defendant's settlement offer would be considered an abuse of discretion." *Siracuse*, No. 07 CV 2205 (CLP), 2012 U.S. Dist. LEXIS 73456 at *62 (citing *Ortiz*, 980 F.2d at 141; *National Ass'n for the Advancement of Colored People v. Town of East Haven*, 259 F.3d 113, 120 (2d Cir. 2001)("holding that a forfeiture of fees due to a party's refusal to accept a settlement offer is not 'bad faith' and would be contrary to the holding in *Ortiz*, which was designed to 'prohibit the use of informal negotiations as a basis for reducing fee awards in order to avoid just this sort of hindsight scrutiny of a litigant's tactical decisions that would "improperly dissuade []" "plaintiff's with meritorious claims… from pressing forward with their litigation""")(as interpreted by *Siracuse*).

Here, Defendant's request to reduce future fee awards is a violation of the principles set forth under *Ortiz* and *National Ass'n for the Advancement of Colored People*. By reducing future fee awards, Defendant is seeking to cut off Plaintiff's ability to reject unreasonably low settlement offers under the auspices of a court order. But if the lodestar amount in a future fees' application cannot be reduced based on a plaintiff's rejection of previous settlement offers, then Defendant cannot achieve the same effect by limiting future negotiations. In other words, proscriptively limiting future fees' awards effectively prevents Plaintiff from negotiating with a free hand during settlement discussions and rejecting counteroffers that Plaintiff considers unreasonably low. Plaintiff is put in the same position as the plaintiffs in *Ortiz* and *National Ass'n for the Advancement of Colored People*. Although Plaintiff has not rejected a settlement offer from Defendant and no fees application is pending, the effect is the same because Defendant seeks to achieve by court order what the Court would have been prevented from doing in considering a future fees' application had negotiations proved fruitless.

"Finally, to criticize counsel and cut fees based on the rejection of defendant's settlement offer ignores the fact that, in the end, it is the client who decides whether or not to accept a settlement offer." *Siracuse*, No. 07 CV 2205 (CLP), 2012 U.S. Dist. LEXIS 73456 at *64. "Although counsel is required to inform their client of any offer and presumably advise the client as to the risks and benefits of any proposed settlement, in the end, the decision belongs to the client." No. 07 CV 2205 (CLP), 2012 U.S. Dist. LEXIS 73456 at *64. The same is true here. By limiting a future application for fees, Defendant is effectively trying to force future negotiations within certain prescribed limits, but those limits are not determined by counsel. It is ultimately up to Plaintiff to decide what is an acceptable settlement offer.

Defendant makes copious reference to the standards surrounding fee applications with the Court. But the argument misses the mark. Plaintiff has not filed an application for attorneys' fees with the Court and this litigation is ongoing. Negotiation during the course of litigation is a dynamic process, with any settlement demands considering a host of different factors, not just those surrounding attorney's fees. And it is here that Defendant makes its second crucial mistake: Defendant merely assumes that two principle considerations in



Plaintiff's initial settlement demand were statutory damages and attorneys' fees.  While those were certainly considerations, so too were future remediation costs and future intervention, including supervision of remediation efforts, necessary to achieve compliance with the ADA; anticipated future attorneys' fees as the litigation progresses; costs; and finally, punitive damages.

It is well-established that the bar is low for punitive damages under the New York City Human Rights Law ("NYCHRL").  Discrimination alone satisfies this low threshold under the NYCHRL, whereas it would not under the ADA and the federal rules.  *See Chauca v. Abraham*, 2017 NY Slip Op 08158, 30 N.Y.3d 325, 333, 67 N.Y.S.3d 85, 89 N.E.3d 475.  In 2005, the New York City Council amended Administrative Code § 8-130 [a].  This revised standard "requires neither a showing of malice nor awareness of the violation of a protected right, representing the lowest threshold, and the least stringent form, for the state of mind required to impose punitive damages. By implementing a lower degree of culpability and eschewing the knowledge requirement, applying this standard adheres to the City Council's liberal construction mandate while remaining consistent with the language of the statute.  *Chauca*, 2017 NY Slip Op 08158, 30 N.Y.3d at 333-34 (citing Administrative Code § 8-502 [a]).  As such, in addition to the $1,000 in statutory damages Plaintiff is entitled to, Plaintiff is also entitled to punitive damages based exclusively on the discrimination he suffered. This was also a consideration in Plaintiff's initial settlement demand.

To the extent that Defendant is arguing that consideration of future fees and costs is unnecessary because the Website has been remediated, Defendant's only evidence in this respect is a one-page email from an unknown third-party vendor purporting to certify that the Website is compliant with WCAG 2.1 level AA. *See* Dkt. # 11.  It is well-established that "[t]he burden on Defendant 'to demonstrate mootness is a heavy one,'" *see Marin v. Town of Se.*, 136 F. Supp. 3d 548, 561 (S.D.N.Y. 2015), and that burden has not been met here by such slim evidence.  Moreover, "[i]t is black-letter law that a 'voluntary cessation of challenged conduct does not ordinarily render a case moot.'"  *Hecht v. Magnanni Inc.*, No. 1:20-cv-05316 (MKV), 2022 U.S. Dist. LEXIS 60836, at *8 (S.D.N.Y. Mar. 31, 2022).  "Plaintiff's request for injunctive relief under the ADA will only be deemed moot if the Defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'"  *Hecht*, No. 1:20-cv-05316 (MKV), 2022 U.S. Dist. LEXIS 60836 at *9.  Again, an email from a third-party vendor, whatever can be drawn from its statement that the Website is *currently* WCAG 2.1 compliant, says nothing about Defendant's commitment to remaining compliant with the ADA in the future.

Finally, even if Defendant's citations to the standards surrounding a fee application were relevant, its conclusions are debated.  *See e.g. Shabazz v. City of N.Y.*, No. 14-CV-6417 (GHW), 2015 U.S. Dist. LEXIS 161728, 2015 WL 7779267, at *3 (S.D.N.Y. Dec. 2, 2015)("Courts in this district have generally determined that the range of appropriate fees for experienced civil rights litigators is between $350 and $450 per hour."). *Shabazz* is almost ten years old, and it quotes a range at Defendant's *high end*.  Defendant's hourly rates are therefore patently unreasonable.  We thank the Court for its kind consideration and courtesies.



Respectfully Submitted,

*/s/ Mark Rozenberg*
By:  Mark Rozenberg, Esq.